## PAUL N. MYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7283.    Promulgated August 12, 1927.

*Leon F. Cooper, Esq.*, and *R. E. Glessner, Esq.*, for the petitioner.
*F. O. Graves, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency of $663.46 in income taxes for 1920. Respondent refused to allow a deduction for a loss alleged to have been sustained in that year by reason of the alleged worthlessness of stock.

### FINDINGS OF FACT.

The petitioner is an individual residing in St. Paul, Minn.

In 1912 the petitioner became acquainted with one P. K. Nielsen, who was the inventor of a cream separator. The letters patent covering this invention had been issued to Nielsen and by him assigned to the Helix Cream Separator Co., a Minnesota corporation, organized January 9, 1906. The corporation had a manufacturing plant where there were employed ten or fifteen men, and was engaged in manufacturing and selling cream separators. Nielsen, who was the principal common stockholder of the corporation, endeavored to enlist financial aid in support of the enterprise. The petitioner had an investigation made of the machine and its manufacture by a mechanical engineer. After receiving a favorable report from the engineer, and after having tried out one of the separators on his own farm, and having found it to be satisfactory, the petitioner began lending money to the company. He made loans at various times and received notes for the amounts advanced. It was agreed that he could elect whether to take stock for the amount of the notes or have the notes paid. By 1914, the money lent and the interest due thereon had accumulated to $17,700. During this entire period the petitioner made frequent visits to the plant of the company.

By the summer of 1914, the petitioner had been in the active management of a business for twenty years, and he resigned for the purpose of taking a year's vacation. He advised Nielsen that he would put no more money in the business at that time, and that he would take stock for the money advanced by him. On July 16, 1914, he exchanged the notes for 1,770 shares of the preferred stock of the Helix Cream Separator Co., having a par value of $10 a share. The company did not have the money with which to pay the notes. The petitioner and his family soon thereafter went to South Carolina. The stock issued to petitioner was the only preferred stock issued by the Helix Cream Separator Co.

On his return in the spring of 1915, the petitioner became engaged in the consolidation and financing of three concerns in St. Paul. This required his entire time and he gave no attention to the affairs of the Helix Cream Separator Co. In the fall of 1915 or some time in 1916, Nielsen asked petitioner if he would put any more money in the business. Petitioner refused, but stated he was willing to allow the money he had already invested to remain. That was the last time petitioner saw Nielsen.

In 1919 the petitioner started an investigation to determine the status of his investment. He visited 693 Raymond Avenue, St. Paul, the place where the business had last been conducted, but found others in occupancy who could give him no information as to the Helix Cream Separator Co. He wrote a letter to the postmaster at Minneapolis, where Nielsen had lived, who refused, under the regulations of his department, to give information as to the address of Nielsen or the company. At the postmaster's suggestion, however, he addressed letters to Nielsen and the company on December 16, 1919. These were returned to him unclaimed. He received a letter dated December 11, 1919, from the Union State Bank at Minneapolis, stating that they had not seen Nielsen for a number of years. The woman who had formerly been the secretary of the company informed him in December, 1919, that Nielsen had gone to Texas to sell land to make money to put in the business, and that she did not know where he was.

In 1915 there were placed in storage at the warehouse of the Skellet Company in Minneapolis some office furniture, machinery, patterns, and boxes of loose odds and ends of machinery, for the Helix Cream Separator Co. The charges for hauling and storing these goods were never paid. In the spring of 1918 the storage company advertised them and placed them on sale with other articles on which charges had not been paid. No one bid on these goods and the storage company bid them in for the amount of the charges.

One Barney Anderson was the owner of some common stock of the Helix Cream Separator Co. On March 11, 1914, he and one E. E.

Austin each gave a note for $2,000 to the company at Neilsen's solicitation. As security for payment of the notes each was given a chattel mortgage on the property of the company, described as follows:

All the property of every kind and character owned by the said Helix Cream Separator Company situated in, around, and about the premises known as 693 Raymond Ave. in the City of St. Paul, Ramsey County, Minnesota, consisting in part of equipment, machinery, tools, stock on hand, Cream Separators completed and in process of manufacture, all fixtures, belts, pulleys, all material, office furniture, and office and factory supplies.

The notes were sold to a bank who enforced payment from Anderson and Austin. Anderson and Austin never foreclosed their mortgages.

In 1917 Austin located one John B. Ogden, apparently a promoter of sorts, who, he believed, could revive the business. Although Anderson had little faith in Ogden, the following contract was entered into between the three:

THIS AGREEMENT made and entered into this *14th* day of November, 1917, by and between Barney Anderson, E. E. Austin and John B. Ogden, all of the City of Minneapolis, Minnesota,

WITNESSETH, That whereas the said Barney Anderson and E. E. Austin are the owners of the assets of the Helix Cream Separator Company, a corporation, and the said company is not now operating and said Barney Anderson and E. E. Austin are desirous of securing the services of the said John B. Ogden hereafter known as the party of the second part, to organize a company to take the place of the said Helix Cream Separator Company and put the same on its feet, and in order to induce the said party of the second part so to do:

Now THEREFORE, the said parties of the first part do hereby agree to sell and convey to party of the second part an undivided one-third interest in the principal assets of the said company as far as they may have the same under their possession and control, or be in a position to obtain the same, subject to all claims, however, against the said assets for storage charges or expenses incurred in keeping the same, and any further assets formerly belonging to said company which they may hereafter acquire or may be able to acquire as practicable, such as the patents formerly belonging to said Helix Cream Separator Company;

IN CONSIDERATION THEREOF, the said party of the second part does hereby agree to and with the said parties of the first part to devote his efforts to the organization of a new company to be organized under the laws of the State of Minnesota, with a capital stock of *One Hundred and Fifty Thousand,* the same to be divided in shares of *One Hundred Dollars* ($100.00) each, and further that he will agree to sell and convey, together with parties of the first part the entire assets formerly owned by said corporation and now held by parties of the first part, to said new corporation so to be formed, and receive in payment therefor the estimated value of his said one-third interest in said assets in stock of said corporation, the parties of the first part to likewise each receive in stock of said company the same amount each for their one-third interest and not exceeding the sum of *Fifteen Thousand Dollars* in stock. Further, that if the directors of said corporation so to be

formed, the same to be a manufacturing corporation, is desirous to secure the services of party of the second part as a financial agent to sell stock of said company and organize the same as a going concern, that the parties of the first part will agree to vote for or consent that party of the second part shall receive the sum of Fifteen Hundred Dollars ($1,500.00) in cash from the first sales of stock after paying organization expenses, as his compensation for such promotion and stock selling, in addition to any amount that may be agreed upon by the directors of said corporation so to be formed and party of the second part, as additional compensation therefor.

It is further agreed that the party of the second part shall furnish the amount of the necessary cash expense to be paid for the incorporation fees and attorney's fees for organizing such corporation, the same to be reimbursed to him out of the first sales of stock that may be made.

IN WITNESS WHEREOF, the parties hereto have signed these presents this *14th* day of November, 1917.

(Signed)    BARNEY ANDERSON<br>
E. E. AUSTIN<br>
JOHN B. OGDEN

In 1919, about one year after the Skellet Company had purchased the goods of the Helix Cream Separator Co. which had been stored with them, Ogden approached them, stated that he knew about the company and machinery and was interested in it. He induced the storage company to move the articles to 2112 Fourth Avenue, Minneapolis. At that place Ogden set up an office and had a storage room where he kept the machinery. Ogden had a draughtsman at the place who was engaged in drawing plans. A name appeared on the window of the place, which, if not "Helix Cream Separator Company," was similar thereto. Ogden endeavored to secure financial assistance for the venture but could not. He remained at this place of business until early in 1920, when he abandoned it. The Skellet Company again took possession of the property, with the exception of the office furniture, which had disappeared, and sold it as junk.

In his income-tax return for 1919 the petitioner deducted the amount of $17,700 as a loss. This was disallowed by the respondent. The amount was later approved as a deduction for 1920, and subsequently the respondent determined that it was not an allowable loss in either year. In determining the deficiency here involved, the respondent had disallowed a deduction of $17,700 covering the alleged loss.

The records of the Secretary of State of Minnesota show that the authority granted to the Helix Cream Separator Co. to do business as a corporation has not been revoked or canceled.

So far as is known, the patent rights in the separator manufactured by the Helix Cream Separator Co. are still owned by it.

· OPINION.

STERNHAGEN: While it may be true, as petitioner's counsel say, that the time when stock becomes worthless is not such a fact as can be fixed with certainty, nevertheless the finding must be reasonably made in relation to such certain facts as are available. Merely because men may differ as to the proper period within which the loss is established as a deduction, a taxpayer may not postpone the deduction out of all relation to the evidence at hand. The law does not require the taxpayer to be an incorrigible optimist, *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398, nor will he be permitted to postpone his deduction as if it did.

The evidence before us indicates that long before 1919 the company had neither assets nor prospects, and that there was no gainsaying the worthlessness of the stock long before the taxable year. The vague activities of Ogden had nothing to do with petitioner's stock. Ogden was in some way concerned with the property formerly owned by the corporation, but the property had already been sold for storage, and the corporation's interest wiped out.

> *Judgment will be entered for the respondent on 15 days' notice, under Rule 50.*

Considered by GREEN and ARUNDELL.